## FIRST STATE BANK OF ROCK SPRINGS v. SHERRILL.
### No. 8396.

Court of Civil Appeals of Texas. San Antonio. April 2, 1930.

Rehearing Denied April 30, 1930.

See, also, 289 S. W. 123; 293 S. W. 317.

Douglas & Black, of San Antonio, and Coke Stevenson, of Junction, for appellant.

Morriss & Morriss, of San Antonio, for appellee.

SMITH, J.

On October 15, 1919, B. D. Sherrill, appellee, gave a chattel mortgage to the First State Bank of Rock Springs, appellant, upon 1,200 sheep and the wool to be thereafter clipped from said sheep, to secure his indebtedness to the bank in the sum of $11,498. In addition to the usual provisions the mortgage contained the following stipulations:

"It is further understood that by the acceptance of this mortgage the said First State Bank of Rocksprings agrees to receive from me at a place to be designated by them for storage and sale my entire clip of wool and mohair for the year 1919, grown on the flock of sheep and goats herein mortgaged and all subsequent clips of wool and mohair sheared from said sheep and goats until this mortgage is fully satisfied, using their best judgment and discretion to sell or to ship or consign for sale the said wool and mohair.

"I agree to deliver to the said First State Bank of Rocksprings, at a place designated by them, on or before the 15th day of April, 1920, my entire clip of wool and mohair for the year of 1919, and further agree to deliver to the said First State Bank of Rocksprings at the same place regularly thereafter until this mortgage or lien is fully satisfied, each six months clip of wool and mohair from said sheep and goats as the same is sheared."

Upon the trial of this cause the jury found that Sherrill delivered or caused to be delivered to the bank, at a place designated by it, the wool clipped from said sheep in the fall of 1919, and spring of 1920, of the net value of $994 and $1,773, respectively. From a judgment for that amount in favor of Sherrill, the bank has appealed.

It is first contended by appellant that the cause of action set up by appellee in his trial petition was not the same cause of action alleged in the original pleadings, and was barred by limitations, since the trial petition was filed more than four years after the accrual of the cause of action therein asserted. In his original petition, filed in July, 1923, appellee sought to recover $6,500 of appellant, upon alternative grounds, first, that appellant collected the proceeds of two clips of wool, of 6,000 pounds each, belonging to appellee, and under the terms of the contract of the parties appellant collected said proceeds for the

benefit of appellee and to be applied upon the latter's debt to appellant, but that appellant had failed and refused to so apply said proceeds, to appellee's damage in the amount thereof; and, second, that under and by virtue of the contract of the parties, appellant was bound and obligated to collect the proceeds of the sale of said two clips of wool and apply the same to appellee's debt to appellant, or "pay and refund the same" to him, but that appellant had grossly neglected to do so. It will be observed that, when analyzed, appellee's petition asserted a cause of action against appellant because of the latter's failure to credit appellee with the proceeds from the sale of two clips of wool, of the value of $6,500, as appellant was obligated to do by a contract between them. So much for appellee's original petition.

In his first amended original petition, filed in August, 1925, appellee set up the facts of his debt to appellant, of the chattel mortgage upon appellee's sheep and the wool thereof, to secure the debt; that appellant contracted to collect the proceeds from the sale of the fall 1919 and spring 1920 clips, and apply the same to the payment of appellee's debt to appellant; that under said contract appellant "undertook the collection of the proceeds of the sale of the said two clips of wool, but did not use diligence in so doing, but was negligent and grossly negligent in failing to collect the same," and by reason of said negligence appellee had been damaged in the amount sued for, $6,500, "such damages representing the proceeds of the sale of each of said two clips of wool." Again it will be observed, upon analysis of this amended petition, that appellee's complaint is grounded upon appellant's failure and refusal to credit the proceeds of said two clips of wool upon appellee's debt to appellant, as provided in the contract of the parties. Upon that petition the cause was first tried, but the judgment rendered upon that trial was reversed by this court. Sherrill v. First State Bank (Tex. Civ. App.) 293 S. W. 317.

The cause was finally tried upon appellee's second amended original petition, filed in October, 1929. In that petition the contract between the parties, as embraced in the chattel mortgage, was set up in full, showing upon its face to be the contract referred to and relied upon by appellee in his former pleadings. Other allegations appearing as generalities in prior pleadings were amplified in the trial petition, in which it was specifically pleaded, as was carelessly pleaded before, that, in pursuance of said contract, the two clips of wool described in each of the prior pleadings were delivered to appellant through a designated agent at Kerrville, were there sold by said agent for specified sums; that under said contract appellant was obligated to credit appellee's account with the proceeds of said sales, but had failed and refused to

do so, to appellee's damage in the amounts thereof.

It is obvious from the foregoing statement that the burden of appellee's complaint through all his pleadings was that under the contract of the parties appellant was obligated to credit appellee's account with the proceeds of the sales of the two clips of wool in controversy, but had not done so, to appellee's damage in the amount of those proceeds. Appellee's description of this obligation, and of appellant's performance thereunder, differed in some details in each of the pleadings, but the substance of it remained the same throughout all of them. It amounted to the same claim, the same complaint, the same cause of action, which was, that appellant had failed, though obligated thereto under its contract, to credit appellee with the proceeds of the sales of two certain clips of wool. We overrule appellant's first and third propositions of law.

Appellant's second, fourth, sixth, and seventh propositions arise from the contention that the evidence was insufficient to support the verdict and judgment. We have very carefully reviewed the evidence, and conclude that it amply supports the result obtained below. We deem it unnecessary to set out the evidence. The propositions mentioned will be overruled.

It was alleged in appellee's trial petition that appellant designated the Schreiner Warehouse at Kerrville as the place for the delivery and medium for the sale of the wool, and that "said persons so handling and managing such sale were acting for and as the agents and representatives of defendant, and plaintiff delivered said wool at said warehouse, and to the persons in charge thereof, under the contract aforesaid and as the agents of defendant." Appellant specially excepted to that allegation, "Because same are conclusions only; and plaintiff fails to allege specifically whether Schreiner agreed to accept said wool as agent for defendant or otherwise treated said transaction as assuming the obligations of agency for defendant, or that the wool was delivered to Schreiner in that capacity." The court overruled the exceptions, and that ruling is complained of in appellant's fifth proposition. We overrule the proposition. If appellant designated the Schreiner Warehouse as the depository for the wool, and as the broker for the sale thereof, as alleged by appellee, then appellant's liability to appellee would not be affected by the attitude or action of the warehouseman in the transaction, for by its selection appellant assumed responsibility for the warehouseman's conduct. Under the allegation complained of, then, it was unnecessary to further allege that the warehouseman agreed to accept the designation, or to act as appellant's agent in the transaction. Even if the

ruling complained of had been technically erroneous, it was nevertheless harmless, for the evidence supported the omitted allegations as well as those included in the petition.

There is no conflict in the testimony as to the amount of the net proceeds of the sales of the two clips of wool: The uncontroverted evidence showed clearly and conclusively that the net proceeds from the fall 1919 wool clip amounted to $3,095.61, and from the spring 1920 clip, $1,773.99. The jury, however, for some reason not accounted for, found the net proceeds of the 1919 clip to be $994.09, instead of the correct sum, $3,095.61. They correctly found as to the 1920 clip, $1,773.99. The court rendered judgment in accordance with the jury findings, or a total of $2,768.08, whereas, the true amount, as disclosed by the record, is $4,869.60, with interest as found by the court below. Upon appellee's cross-assignments of error, the judgment will be reformed accordingly, and, as so reformed, affirmed.

Reformed and affirmed.